UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
REGINALD HARRIS,                              :

                 Petitioner,         :

         -against-                 :        **REPORT AND RECOMMENDATION**

JOHN LEMPKE,                                  :        09-CV-5193 (LAP)(KNF)

              Respondent.     :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LORETTA A. PRESKA, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On May 9, 2009, Reginald Harris ("Harris") filed a petition for a writ of habeas corpus,
pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of second-degree
burglary (New York Penal Law ("PL") § 140.25(5)), one count of third-degree robbery (PL
§160.05) and one count of third-degree escape (PL § 205.05), and a sentence to consecutive
terms of fifteen years and twelve years imprisonment for the burglary convictions, to run
concurrently with two concurrent terms of three-and-one-half to seven years and one year
imprisonment for the robbery and escape convictions, respectively, and five years post-release
supervision.  Harris claims that: (1) he was deprived of his due process right to a fair trial by the
court's (a) failure to instruct the jury to consider the evidence of each charged crime separately,
and (b) adverse inference jury instruction, which invited the jurors to excuse the loss of a lineup
report by the police if they accepted a detective's explanation that the report was not lost
deliberately but because the detective was suspended from duty after allowing a prisoner to
escape; (2) his sentence was excessive; (3) his right to due process and a fair trial was denied by

prosecutorial misconduct before and during trial; (4) his right to counsel during a lineup and fingerprinting was violated; and (5) he was denied the effective assistance of counsel, when counsel failed to: (i) file the appropriate pre-trial motions, (ii) challenge various evidentiary rulings, (iii) prepare for trial, (iv) advocate for the defendant at the pretrial proceedings, and (v) "otherwise provide" assistance to him.  The respondent opposes the petition.

## BACKGROUND

Carolee Constable ("Constable") lived with her daughter in a second-floor apartment at 2472 Seventh Avenue in Manhattan.  On March 20, 2003, at 11:30 p.m., Constable was at home watching television in her bedroom.  Her daughter was spending the night away from the apartment.  Constable's kitchen window, which was next to the fire escape, and a security gate were open.  From her bedroom, Constable observed a shadow approach from the kitchen.  She jumped from her bed and entered the kitchen.  She saw Harris and asked what he was doing in the kitchen.  Harris told Constable to return to her bedroom and put his hand in his pocket, making Constable think that he had a gun.  Constable returned to her bedroom.  Harris ordered her to remove her clothes and go onto the bed.  She did not remove her clothes but went onto the bed.  Harris removed pocketbooks, wallets, coins from a jar, a credit card, a bank card and a cellular telephone from the bedroom.  He yanked Constable's telephone, grabbed her keys from the table next to her bed and used them to lock Constable in the bedroom.  While locked in the bedroom, Constable asked for water.  Harris gave her a water bottle he retrieved from the refrigerator.  Constable waited until Harris left the apartment to contact the police.

Police officers arrived to Constable's apartment on March 21, 2003, at approximately 3:30 a.m.  They opened the unlocked front door and, upon being informed by Constable that it was okay to destroy the bedroom door to release her, kicked in the door.  Constable noticed that

her stereo, large duffle bag and radio were gone.  An unopened bottle of rum was on the desk.

The police obtained fingerprints from the bottle of rum.  After the police finished gathering

evidence, Constable re-entered her apartment briefly with her sister, daughter, cousin and some

friends and then exited.  Constable's sister was the last person to leave the apartment and locked

the door behind her.

On March 22, 2003, at approximately 9:00 a.m., Constable's sister, who lived above

Constable, stopped at Constable's apartment.  She discovered that the door was unlocked, and

many items were packed by the door, as if Constable was moving out.  Subsequently, Constable

arrived at her apartment and observed that her shopping cart was full of "stuff and food," her

belongings had been taken, including a computer, a full-size computer monitor, compact discs,

jewelry, clothing, a suitcase and a bottle of rum that had been on the table previously.  Other

items were positioned as if someone planned to retrieve them.  In the bedroom, a knit cap Harris

had worn was discovered behind the television.  Constable returned to her sister's apartment and

called the police.  Police officers inspected the scene.  Additional fingerprints were lifted and a

cigarette butt, a hair fiber and a knit cap were retrieved.  Thereafter, Constable changed the lock

on her front door.

On the same morning, at around 8:00 a.m., Carmen Williams ("Williams") was outside

her apartment on West 144th Street talking with neighbors when she saw a man carrying a

suitcase with a computer monitor in it.  The man was holding the suitcase and stopped in front of

Williams for about five minutes.  When Williams saw police officers in front of the building, she

told them what she had seen.  On April 4, 2003, detective Wayne Gonzalez examined two useful

latent prints lifted from the rum bottle in Constable's apartment and determined that they

matched Harris's fingerprints.

3

On April 21, 2003, at 6:00 a.m., while alone in her apartment, Constable thought she heard the front door open. She assumed it was her daughter, who had been too frightened to sleep at home. When she investigated the noise, she found that the front door was open. Constable walked out of her apartment into the stairwell and observed Harris in the lobby of the apartment building. She called the police, then ran to her window, looked outside and observed Harris walking toward "143rd Street." When the police responded, they did not find Harris or make a report.

On December 13, 2003, detective Ervin Urbina ("Urbina") told Constable that he believed the police located the person who had robbed her. She viewed a lineup in the police precinct and identified Harris. Harris was arrested and taken for fingerprinting. While escorting Harris to a holding cell upstairs, Urbina was distracted and Harris escaped. The following day, the police apprehended Harris.

A grand jury charged Harris with: (1) third-degree robbery and second-degree burglary, for the crimes committed on March 20, 2003; (2) two additional counts of second-degree burglary, for the events of March 22 and April 21, 2003; and (3) first-degree escape, for fleeing from the police precinct on December 13, 2003. The escape charge was reduced subsequently to third-degree escape. Harris moved to suppress identification testimony; the motion was denied at a hearing held pursuant to United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926 (1967). Thereafter, the case proceeded to trial before a jury.

The jury convicted Harris on: (i) two counts of second-degree burglary; (ii) third-degree robbery; and (iii) third-degree escape. On June 24, 2004, Harris was sentenced, as a second violent-felony offender, to consecutive terms of fifteen years and twelve years imprisonment, for the burglary convictions, to run concurrently with two concurrent terms of three-and-one-half to

4

seven years and one year imprisonment for the robbery and escape convictions, and five years

post-release supervision.

On appeal, Harris claimed that: (1) he was deprived of his due process right to a fair trial

by (i) the court's failure to instruct the jury to consider the evidence of each charged crime

separately, and (ii) the court's adverse inference jury instruction, which invited the jurors to

excuse the loss of a lineup report by the police if they accepted a detective's explanation that the

report was not lost deliberately but because the detective was suspended from duty after

allowing a prisoner to escape; and (2) the 20-year imprisonment sentence imposed for the two

burglary convictions was excessive.  The New York State Supreme Court, Appellate Division,

found that

> Defendant's argument that the court should have instructed the jury not to
> commingle the evidence of the two incidents, and his challenge to the adequacy of
> the court's adverse inference charge with respect to the loss of a lineup report are
> unpreserved and we decline to review them in the interest of justice.  Were we to
> review these claims, we would find that the charge made it sufficiently clear to the
> jury that the evidence as to each incident was to be considered separately and that the
> language employed in the adverse inference charge was appropriate.  We perceive
> no basis for reducing the sentence.

> People v. Harris, 29 A.D.3d 387, 388, 813 N.Y.S.2d 904 (App. Div. 1st Dep't 2006)
> (internal citations omitted).

On June 23, 2006, leave to appeal to the New York Court of Appeals was denied.  See People v.

Harris, 7 N.Y.3d 757, 819 N.Y.S.2d 882 (2006).

Harris made a motion to vacate the judgment, pursuant to Criminal Procedure Law

("CPL") §§ 440.10 and 440.20.  He claimed that: (1) he was denied his right to counsel at the

lineup; (2) the statement he made during fingerprinting should have been suppressed, because it

was obtained by a ruse; (3) the prosecutor committed misconduct by presenting false evidence to

the grand jury; and (4) his counsel rendered ineffective assistance to him.  The court denied his

motion, finding that, to the extent that false or conflicting testimony was offered, it was for the grand jury to weigh the evidence and resolve any issues concerning credibility.  The court rejected Harris's claim that his fingerprinting was a ruse to obtain an incriminating statement from him, since Harris neither explained the ruse nor indicated the statement he made, and no evidence of his statement was elicited or introduced at trial.  The court found that Harris had no right to counsel at the lineup because it was conducted while he was awaiting arraignment subsequent to his arrest on an unrelated drug possession charge.  After Harris was identified at the lineup, police personnel started the arrest process by fingerprinting him; however, Harris escaped from the precinct.  At that point, Harris had neither been arraigned on the drug charge for which he was arrested, nor on any charge arising out of the crimes for which he had been identified via the lineup and arrested.  At that juncture in the process, Harris did not request counsel and no counsel appeared on his behalf.  The court determined that Harris's ineffective assistance of counsel claim, made in connection with: (a) two amendments to the indictment; (b) counsel's failure to challenge the admissibility of the fingerprint evidence; (c) counsel's failure to seek appropriate sanctions, pursuant to People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961); (d) counsel's role in the plea negotiations, during which counsel was alleged to have attempted to persuade Harris to accept a plea carrying a 45-year sentence; and (e) counsel's failure to cross-examine an eyewitness at the Wade hearing and at trial regarding the lineup, was not preserved for review because Harris failed to raise those grounds on appeal, unjustifiably. The court found no merit to Harris's claim that his counsel rendered ineffective assistance to him based on the remaining grounds.  Leave to appeal from the court's determination of Harris's motion to vacate the judgment was denied.

　　　　This petition followed.  Harris's motion for an order staying the petition to afford him an

opportunity to exhaust several new claims in state court and for leave to amend the petition to include those claims was denied, but he was permitted to amend his petition regarding the grounds already asserted in the petition and to file a reply.  Harris did not amend his petition or file a reply.

## PETITIONER'S CONTENTIONS

Harris repeats in his petition, verbatim, his claims made on appeal.  He contends that the court erred in permitting the jury to commingle the stronger evidence concerning the March 20, 2003 incident with the weaker evidence concerning the March 22, 2003 incident.  According to Harris, during the March 20 incident, Constable claimed that she saw the burglar and he was wearing a baseball cap.  She alleged that the burglar was shuttling objects in and out of the apartment for five hours and may have had an accomplice, but then told the police that the only items missing were a portable radio and a pair of sneakers.  Harris asserts that Constable contradicted herself on the issue of whether she was still locked in the room and whether the burglar was still in the apartment when the police arrived.  Moreover, her claim that the burglar took her keys but she made no effort to change the lock makes no sense.  The evidence supporting the March 22 burglary consisted of the testimony of Constable's friend and neighbor, who reported that she saw Harris that morning on West 144th Street walking with a suitcase and computer monitor and that he stood in front of her for about five minutes.  Moreover, a knit hat that was left by the March 22 burglar was claimed to have been worn by the March 20 burglar.  According to Harris, the court erred in failing to make clear to the jury that the two burglaries were separate and distinct offenses and that they should not conflate the stronger evidence from the two incidents.

Harris asserts that the court's adverse inference jury instruction was improper because it invited the jurors to excuse the loss of the lineup report if they accepted the detective's explanation that the report was not lost deliberately but because he was suspended from duty after allowing a prisoner to escape.  While the court instructed the jury properly, that it may, but was not required to infer that the missing report undercut Constable's claim that she identified Harris in the lineup, it undermined that instruction by further instructing that the jury may consider the detective's explanation for the loss.  The court's error went to the most critical issue at trial—whether Harris was the burglar.  Harris contends that the two errors by the court are not harmless.  He asserts that his 20-year sentence to imprisonment is excessive, and a reduced sentence is warranted because "he had only two prior burglary offenses," the court's characterization that he "terrorized" Constable was exaggerated, and he was "largely homeless at the time of this offense."

Harris also included in his petition, three arguments he raised in his CPL §§ 440.10 and 440.20 motion, namely, he was denied his right to: (1) due process and a fair trial by prosecutorial misconduct prior to and during trial; (2) counsel during the lineup and other "pre-indictment/post arrest" proceedings; (3) effective assistance of counsel, when counsel failed to (i) file the appropriate pretrial motions, (ii) challenge various evidentiary rulings, (iii) prepare for trial, (iv) advocate for the defendant at pretrial proceedings, and (v) "otherwise provide the counsel guaranteed by the Constitution."  Harris asserts that the "postindictment viewing of the defendant, after being arrested at central booking on an unrelated charge, where he did not waive his right to counsel, violated his [S]ixth [A]mendment rights to the assistance of counsel at said lineup."  Harris contends that "upon taking defendant's prints the people further infringed upon defendant by the taking of a statement which the people intentionally elicited and placed in their

8

direct case." Furthermore, evidence presented to the grand jury was false. During the grand jury proceeding, Constable was asked about the time that led up to the morning of March 21, 2003. The prosecutor's questioning of Constable was meant to show that Constable was in her apartment at the time the evidence collection team arrived, but she stated that she had not come back to her apartment that morning. Constable was asked what happened when she arrived home on March 22, 2003, and she recounted that the apartment was trashed and items were missing. Officer "Obrien" was also asked about the morning of March 21, 2003, the time Constable stated she had not come back to her home. The officer claimed that he collected fingerprints from Constable's apartment at that time. Harris asserts that "[i]t is this testimony which is false," and the prosecutor knew it was false, but continued to trial even though he knew that the indictment was based on false evidence.

Harris asserts that the admission of his statement, made during fingerprinting and admitted into evidence, was a ruse that violated his rights. Moreover, when his fingerprints were taken the week before trial and he refused and requested to see counsel, his refusal was used against him at his trial by the prosecutor, in violation of the Sixth and Fourteenth Amendments.

Harris contends his counsel rendered ineffective assistance to him by "[p]assing on Rosario issues and impediments [sic] in the indictment, and instead siding with the prosecutor in trying to have me take a plea to 45 years." His counsel did not familiarize himself with the law and the facts of Harris's case sufficiently. Harris asserts that his counsel should be ordered to submit an affidavit in response to his claim because his attempts to secure such an affidavit were not successful. He maintains that "the record is devoid of a prior felony statement. Nor was defendant in the instant case given a prior statement." Additionally, he was not advised of his right to contest the factual basis and constitutionality of a prior felony conviction or his right to

have a hearing to make such a challenge, in violation of CPL § 400.21.  Moreover, he was not

warned that his failure to contest "would waive his right to do so forever," and "the record is

devoid of any waiver by Mr. Harris."  Harris asserts that the second felony determination was

prejudicial because it subjected him to a higher sentence than the one to which he would have

been exposed otherwise.

## RESPONDENT'S CONTENTIONS

The respondent contends that the petition is untimely because it was filed over six

months after the statute of limitations expired.  However, since Harris claims that he did not

receive a copy of the Appellate Division's August 19, 2008 denial of his request for leave to

appeal until April 21, 2009, and "neither the Appellate Division [n]or the prison facility are [sic]

able to provide documentation to dispute petitioner's claim that he did not receive the August 19,

2008 order until he later requested it from the court in April 2009," equitable tolling may apply

to the period from August 19, 2008, to April 21, 2009, in which case the petition is timely.

The respondent maintains that Harris's claim that his sentence is excessive does not raise

a constitutional issue, if it falls within the statutory range, and Harris failed to cite the Eighth

Amendment or argue, in the state court, that his sentence was cruel and unusual.  However, such

a claim may be deemed exhausted, but procedurally defaulted, since no state-court remedy is

available to Harris.  According to the respondent, Harris failed to establish cause for his failure

to alert the state courts to the federal constitutional nature of his excessive sentence state-law

claim, and he cannot establish prejudice because the claim is meritless, in light of the serious

nature of Harris's acts and their effect on the victim.  Moreover, Harris failed to proffer evidence

to show he is innocent.

The respondent contends that Harris's claims regarding the jury instructions are not cognizable on federal habeas corpus review because the Appellate Division's finding that Harris failed to preserve these claims for review operates as a procedural bar to federal habeas corpus review.  The respondent maintains that New York's preservation rule applied by the Appellate Division in Harris's case is a firmly established and regularly followed rule, and nothing in the record indicates that the state court was aware of Harris's specific claims regarding the jury instructions.  The respondent asserts that Harris did not establish cause for the default and prejudice resulting from it or that he is actually innocent to overcome the procedural default. Moreover, according to the respondent, Harris's claims concerning the jury instructions do not raise a federal constitutional question and they are meritless because the court: (i) instructed the jury that the prosecutor must prove every element of each crime beyond a reasonable doubt; and (ii) addressed the elements of each crime separately, which required the jury to perform separate evaluations of each crime.  Furthermore, the adverse inference jury instruction was proper because the prosecutor conceded at trial that the lineup report was lost and could not be located despite diligent efforts, and no evidence was adduced establishing that the report was misplaced deliberately.  Since, under New York law, drawing an adverse inference is not mandatory, a trial court is entitled to offer guidance to the jury regarding its decision on whether to draw an adverse inference.  Accordingly, it was appropriate for the court to direct the jury's attention to the detective's explanation of the lost evidence, while leaving the ultimate decision on whether to draw an adverse inference to the jury.

The respondent contends Harris's claim that the prosecutor committed misconduct in connection with Harris's fingerprints is meritless.  The respondent asserts that the state court's decision on that claim was neither contrary to nor an unreasonable application of clearly

11

established federal law; since the trial evidence established that Harris's fingerprints were taken the week prior to his trial and no evidence was introduced demonstrating that Harris made any statement at that or any other time. Moreover, Harris does not explain how any testimony presented to the grand jury was false, and the grand jury testimony showed that Constable and the evidence collection team were present in her apartment at the same time. Similarly, Harris's claim that he was denied his right to counsel when the lineup was conducted is meritless because, at that time, no formal judicial proceedings had commenced, and the right to counsel had not attached.

The respondent contends that Harris's claim of ineffective assistance of counsel predicated on his attorney's failure to: (1) file appropriate pre-trial motions; (2) challenge various evidentiary rulings; (3) prepare for trial; and (4) advocate for the defendant at the pretrial proceeding, is partially procedurally barred because he did not raise those grounds with the state court. The respondent maintains that, since Harris did not show cause for the procedural default or prejudice resulting from it, or that he is actually innocent, these grounds cannot be reviewed.

Moreover, according to the respondent, the claim of ineffective assistance of counsel is meritless. Prior to trial, counsel filed an omnibus motion, resulting in a hearing and a reduction of a first-degree escape charge to a third-degree escape charge. Counsel cross-examined the witnesses thoroughly, challenged their credibility and cast doubt on Harris's guilt. Moreover, counsel convinced the court to give an adverse inference jury instruction and zealously argued on Harris's behalf at every step of the pre-trial and trial proceedings. As a result, Harris was acquitted of one of the burglary counts.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08, 120 S. Ct. at 1520. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, __ U.S.__, 134 S. Ct. 1697, 1706-07 (2014). On a petition for a writ of federal habeas corpus, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Federal habeas review is foreclosed where a state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment . . .

13

whether the state law ground is substantive or procedural," Coleman v. Thompson, 501 U.S. 722,

729, 111 S. Ct. 2546, 2553-54 (1991), even if the state court ruled on the merits of a federal

claim in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10

(1989).  "Ordinarily, violation of 'firmly established and regularly followed' state rules . . . will

be adequate to foreclose review of a federal claim." Lee v. Kemna, 534 U.S. 362, 376, 122 S.

Ct. 877, 885 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835

(1984)).  "In determining whether New York's preservation rule constitutes an adequate state

ground, we look to the state's statutes and case law interpreting the rule." Richardson v. Greene,

497 F.3d 212, 218 (2d Cir. 2007).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

> Coleman, 501 U.S. at 750, 111 S. Ct. at 2565.

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of — (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time seeking such review; [or] (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws or the United States is removed, if the applicant was prevented from filing by such State actions[.] . . . The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

> 28 U.S.C. § 2244(d).

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

timely filing." Holland v. Florida, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562 (2010) (quotation

marks and citation omitted).  A "state court's failure to send notice within a reasonable time after

entry of an order completing a prisoner's collateral attack" and the prisoner's prompt filing of

the petition after receiving a response to his inquiry with the state court justifies tolling the

statute of limitations.  Diaz v. Kelly, 515 F.3d 149, 155 (2d Cir. 2008).

**APPLICATION OF LEGAL STANDARD**

*Timeliness of the Petition*

On June 23, 2006, Harris's request for leave to appeal to the New York Court of Appeals

was denied.  Harris's conviction became final on September 21, 2006, when the time to seek a

writ of certiorari to the Supreme Court expired.  The petitioner had until September 21, 2007, to

file his federal habeas corpus petition.  On July 27, 2007, Harris filed his state post-conviction

motion, triggering a tolling of the remaining 56 days to file his federal habeas corpus petition,

pursuant to 28 U.S.C. § 2244(d)(2).  That tolling period ended on August 8, 2009, when the

Appellate Division denied Harris's application for leave to appeal from the denial of his motion

to vacate the judgment.  Thus, Harris had until October 14, 2008, to file his federal habeas

corpus petition, which was filed on May 9, 2009, after the statute of limitations expired and after

it was tolled during the pendency of his state post-conviction collateral attack.  However, Harris

qualifies for equitable tolling under the extraordinary circumstances standard, because he did not

receive the state court's decision on his post-conviction motion until April 21, 2009, and he filed

his petition promptly, on May 9, 2009, after receiving the state court's decision.  See Diaz,

515 F.3d at 155.  The Court finds that the petition is timely.

*Jury Instructions Claim*

The Appellate Division determined that Harris's claim that his due process rights were

violated because the court: (a) failed to instruct the jury to consider the evidence of each crime

15

separately; and (b) gave an adverse inference jury instruction which invited the jurors not to

draw an adverse inference against the prosecution, if they believed the detective's explanation

for the lost lineup report was reasonable, was unpreserved.  New York's preservation rule

requires that any matter a party wishes to raise on appeal be brought to the trial court's attention

contemporaneously or "at any subsequent time when the court had an opportunity of effectively

changing" its ruling.  CPL § 470.05(2).  "[T]he contemporaneous objection rule is a firmly

established and regularly followed New York procedural rule."  Downs v. Lape, 657 F.3d 97,

104 (2d Cir. 2011).  Since the Appellate Division's decision rests on a state-law ground that is

independent of the federal question and adequate to support the judgment, federal habeas corpus

review of Harris's claim concerning the court's jury instructions is foreclosed.  See Coleman,

501 U.S. at 729, 111 S. Ct. at 2553-54.  Harris failed to provide any excuse for his procedural

default or to show that prejudice would result from the alleged constitutional violations or that he

is actually innocent.  Accordingly, Harris's claim concerning the state court's jury instructions

cannot be reviewed.

### Excessive Sentence Claim

"No federal constitutional issue is presented where, as here, the sentence is within the

range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).  Harris's

sentence of 20 years imprisonment is within the range prescribed by state law.  See PL §§

70.04(3)(b), 70.25, 70.30(1)(e).  Accordingly, Harris cannot obtain habeas corpus relief based on

his excessive sentence claim.

### Prosecutorial Misconduct Claim

The state court rejected Harris's claim that the prosecutor committed misconduct,

without making citation to or discussing any federal law.  Harris failed to identify clearly

established Supreme Court precedent governing his claim that the prosecutor committed

misconduct during the grand jury proceeding and in connection with taking his fingerprints, and

the Court finds none.  Thus, Harris did not carry his burden of showing that the state-court

decision was contrary to or an unreasonable application of any clearly established federal law.

***Right To Counsel Claim***

"It is well settled that the right to the effective assistance of counsel applies to certain

steps before trial.  The Sixth Amendment guarantees a defendant the right to have counsel

present at all 'critical' stages of the criminal proceedings," which "include arraignments,

postindictment interrogations, postindictment lineups, and the entry of a guilty plea." Missouri

v. Frye, __ U.S.__, 132 S. Ct. 1399, 1405 (2012) (citations omitted).  The right to counsel

attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of

formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois,

406 U.S. 682, 689, 92 S. Ct. 1877, 1882 (1972).

Harris failed to explain how the state court's decision is contrary to or an unreasonable

application of clearly established federal law that the right to counsel attaches at or after the

initiation of adversary judicial criminal proceedings, since Harris's lineup was conducted while

he was awaiting arraignment, subsequent to his arrest on an unrelated charge, and prior to the

commencement of any judicial criminal proceedings.  Thus, the state court's decision was

neither contrary to nor an unreasonable application of clearly established federal law, and

granting habeas corpus relief on this claim is not warranted.

Harris also made a claim that his right to counsel was violated by the prosecutor's

securing a statement from him during the taking of his fingerprints, shortly before trial.

However, that claim was rejected by the state court as unpreserved because it was not raised on

17

appeal, pursuant to CPL § 440.10(2)(c) and (3)(a), and, alternatively, on the merits.  Since the state court's decision rests on a state-law ground that is independent of the federal question and adequate to support the judgment, federal habeas corpus review of this claim is procedurally barred.  See Coleman, 501 U.S. at 729, 111 S. Ct. at 2553-54.  Harris failed to provide any excuse for his procedural default or to show that prejudice would result from the alleged constitutional violation or that he is actually innocent.  Accordingly, this claim cannot be reviewed.

### Ineffective Assistance of Counsel Claim

The state court's determination that Harris's ineffective assistance of counsel claim based on counsel's: (a) failure to challenge two amendments of the indictment; (b) failure to challenge the admissibility of fingerprints; (c) failure to seek appropriate Rosario sanctions; (d) role in the plea offer; and (e) lack of eyewitness cross-examination at the Wade hearing and trial regarding the lineup, is "mandatorily barred," pursuant to CPL § 440.10(2)(c), creates a procedural bar to federal habeas corpus review.  See Coleman, 501 U.S. at 729, 111 S. Ct. at 2553-54.  Harris failed to provide any excuse for his procedural default or to show that prejudice would result from the alleged constitutional violation or that he is actually innocent.  Accordingly, this ineffective assistance of counsel claim cannot be reviewed.

"To establish deficient performance [of counsel], a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'"  Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011) (citation omitted).  A petitioner has the burden of: (a) rebutting "a strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance"; and (b) showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

18

would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (internal quotation marks and citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." Id. at 788.

The remaining grounds of Harris's ineffective assistance of counsel claim were rejected by the state court.  The state court's determination of the ineffective assistance of counsel claim is not contrary to or an unreasonable application of clearly established federal law.  Since Harris did not have a right to counsel during his lineup identification proceeding, counsel's failure to raise Harris's right to counsel at the lineup was proper.  Counsel's failure to argue that Harris's right to counsel was violated when his statement was elicited during fingerprinting is meritless because no basis exists to show that Harris made any statement to law enforcement personnel or that any such statement was introduced at trial.  Harris's fingerprinting, conducted with his consent and in the presence of his counsel shortly before trial, was permitted by state law, and no basis existed for counsel to challenge it.  Harris's argument that counsel failed to cross-examine an eyewitness at the Wade hearing in connection with his lineup is meritless because no eyewitness testified at the Wade hearing or trial in connection with the lineup.  Harris did not show any acts or omissions by counsel before or during trial that fell below an objective standard of reasonableness sufficient to overcome the strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  Accordingly, Harris cannot obtain habeas corpus relief based on his ineffective assistance of counsel claim.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 2220, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Preska.  *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       October 2, 2014

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Reginald Harris

20